IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| IN RE: | ) | CASE NO. BK10-82794 |
|---|---|---|
| | ) | |
| SANITARY AND IMPROVEMENT | ) | |
| DISTRICT NO. #507 OF DOUGLAS | ) | **DISCLOSURE STATEMENT** |
| COUNTY, NEBRASKA, | ) | |

## I. INTRODUCTION

Sanitary and Improvement District No. 507 of Douglas County, Nebraska ("the "District" or the "Debtor") ("SID #507"), pursuant to 11 U.S.C. § 901 et seq. and §1125, provides this disclosure statement to all parties in interest in this case for the purpose of providing them with information which SID #507 considers adequate to enable all parties in interest, according to their claims and interests, to make an informed judgment regarding SID #507's proposed Plan of Adjustment ("Plan") and on the basis thereof to exercise the voting rights provided them under the Plan and applicable provisions of Chapter 9 of the United States Bankruptcy Code (the "Code.")

The Disclosure Statement and Plan of Adjustment of SID #507 constitute the statements and representations of SID #507. No warranty is intended or implied as to the accuracy or adequacy of data presented or opinions expressed, nor may a creditor or other person construe that data provided by or recommendations made by SID #507's counsel, Gross & Welch, P.C., L.L.O..; SID #507's fiscal agent, D. A. Davidson & Co., SID #507's accountants Goracke, Ritterbush & Piotrowski, LLP as a warranty of the accuracy and adequacy of the contents of the Disclosure Statement and Plan of Adjustment. No dealer, broker, salesman, or other person has been authorized by SID

#507 to give any information or make any representation other than as set out by SID #507 in this Disclosure Statement and the Plan of Adjustment.

No representations concerning SID #507 or this Plan, particularly as to its future business operations or the value of its property, are authorized by SID #507 except as set forth in this Disclosure Statement. You should rely on no representations or inducements offered to secure your acceptance other that those contained in this Disclosure Statement. Any representations or inducements not contained herein should be reported to the undersigned attorney for SID #507, who in turn shall report such information to the court for such action as it may deem appropriate.

The information set out in this Disclosure Statement and Plan of Adjustment has been compiled on behalf of SID #507 from sources believed to be reliable. Some of the information contained herein has not been subjected to a certified audit. Counsel for SID #507 has not verified the information set forth herein, but has no actual knowledge of any inaccuracies. The records kept by SID #507 may not have always been complete, and the accuracy of information in this Disclosure Statement is dependent upon the reliability of SID #507's records. For the foregoing reasons, as well as because of the complexity of SID #507's financial matters, SID #507 is unable to warrant or represent that the information contained herein is without any inaccuracy, although great effort has been made to be accurate. The information is not to be construed as a representation by counsel, fiscal agent, or accountant.

The information and expressions of opinion are made subject to change and neither the delivery of said Disclosure Statement and Plan of Adjustment, nor the acceptance of the Plan by the court, nor the exchange of securities, if any, made by

creditors or holders of securities of SID #507, shall create any implication that there has been no change in the information or opinion set forth in said Disclosure Statement and Plan of Adjustment.

Any proposed plan for the exchange of securities and any projections made concerning the probability or possible recovery of the value of any investment made in any series or any type of security or debt instrument of the District is contingent upon a variety of circumstances and conditions and the holder of any class of security or debt of SID #507 accepts and assumes all risk as to the ability of SID #507 to meet its obligations under any Plan of Adjustment ultimately confirmed by the Bankruptcy Court. Further, no assurances are given nor implied that the Plan as initially proposed or such Plan as might finally be confirmed by the Bankruptcy Court represents the best plan, or that other alternatives may or may not exist which might result in a greater or lesser recovery of assets by any creditor or holder of securities of SID #507.

## II. USE AND PURPOSE OF DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to allow the creditors of SID #507 to better understand the circumstances surrounding this bankruptcy filing. The Disclosure Statement outlines the history of SID #507, its operations and its financial status. Please keep in mind that the historical information contained in this Disclosure Statement is based on the records of the District. The facts outlined in the Disclosure Statement have been compiled from the most reliable sources available. While the District does not guarantee the accuracy of all information contained herein, it has used its best efforts to provide the most reliable information available in this Disclosure Statement.

Perhaps more important than the background information set forth in this Disclosure Statement are the forward-looking projections for the District's operations. These include projections for the future of the District and the ability of the District to repay its creditors through the Plan. The projections and assumptions regarding the future operations of the District are based on information currently available and are believed to be reasonable. However, these projections are subject to market forces and other variables which cannot be fully predicted. Therefore, the projections are not intended as and should not be viewed as a guarantee of the assumptions they are based on or a guarantee of the financial outcome of the Plan.

The information and projections contained in this Disclosure Statement should be carefully reviewed. It may be advisable for a creditor of the District to consult with his or her investment, tax and/or legal advisor. An understanding of the information set forth in this Disclosure Statement will provide the necessary background for the creditors of SID #507 to make an informed decision regarding the Plan.

### III. BACKGROUND

In order to properly understand the operations of the District, this section of the Disclosure Statement will provide general information regarding a sanitary and improvement district and specific information regarding SID #507. While not all information applying to SID's generally may apply to this District, this general information is provided as a context for considering the District's current operations.

A.    General SID Overview.

An SID is a political subdivision, similar to a municipal corporation. In many ways, an SID is similar to a small city or village. An SID is responsible for the

construction of public improvements such as roads and utilities within the geographic boundaries of the district. An SID has taxing authority under Nebraska law and the owners of real estate located within the SID pay property taxes to the SID in exchange for the benefits provided. Unlike other political subdivision or municipal corporations, an SID does not have police power. Services such as police and fire department protection are provided through arrangements with nearby city or county governments. A majority of an SID's expenditures occur before it has significant tax revenue. Taxes collected by an SID are based upon the assessed value of the real estate and the improvements to real estate within the SID's boundaries. In the beginning, the SID usually consists of unimproved property. This unimproved property, without street access or utilities, is assessed at a low rate per acre or per square foot. The SID expends significant sums of money to install roads, sewer, power and other infrastructure. Once these improvements have been installed, the value of the lots within the SID's boundaries is increased and are more marketable to individual owners who will then build homes and improve the property.

The owners of the lots within the SID will construct buildings such as homes on these individual lots. These buildings will increase the Tax Base of the SID, since they are valued higher than the vacant lot, thus in turn increasing the SID's tax receipts. Generally once the initial improvements have been installed by the SID, and homes are being built on the existing lots, the operating cost for the SID will generally decrease while the tax revenues will increase as the tax base increases with the construction of new homes.

In the case of SID #507, the SID expended significant funds to install roads, sewers, power and other infrastructure, however, the overall value of the lots has not increased because construction of homes on the individual lots within the boundaries of the District has not continued at a pace that would allow for a significant increase in the Tax Base. A significant increase would mean greater tax revenues and thus allow the District to repay those who had financed the initial improvements, the Construction Warrant Holders.

B. <u>History of the District</u>.

1. The District was legally formed as an SID under Nebraska law on August 24, 2004. The District is a residential development located north of Harrison Street and west of 192nd Street, all within the Southeast Quarter of Section 7, Township 14 North, Range 11. The residential development within the District is commonly known as Falling Waters.

Phase I of Falling Waters subdivision as platted contains a total of 172 lots. A total of 39 lots have been built upon as of October 2009. In addition, in 2007 an additional tract of land along Harrison Street and south of the Falling Waters subdivision was annexed to the District and was initially set aside for the construction of apartments and senior citizen housing. The area annexed will be known as Phase II. A map of the entire area platted is attached hereto as **Exhibit "1"** and is incorporated herein by this reference.

SID #507 paid for the cost of the public improvements in Phase 1 of Falling Waters subdivision such as streets, sewers, water lines, power and gas

mains, and storm and sanitary sewers by issuing capital outlay warrants (hereafter referred to as "Warrants") which were subsequently sold to investors.

An SID levies annual real estate taxes to pay its annual operating expenses and to help pay for the cost of public improvements. That portion of the annual real estate taxes used to pay the SID's annual operating expenses is paid to its General Fund. The balance of the annual real estate taxes which is used to help pay the cost of the SID's public improvements, is paid to the Construction Fund. An SID also levies special assessments against the real estate directly benefitted for the cost of the installation of the public improvements. The amount of the specials assessed against a particular lot will be determined by the special benefit contributed to that particular piece of property. The collected special assessments and proceeds from any bond issues will also be deposited in the Construction Fund. The cash in the Construction Fund may be used to create a sinking fund to retire bonds, if any have been issued, and to redeem the SID's outstanding Warrants or in this case, Certificates of Indebtedness.

The development was originally owned and planned by Dial-Harrison, LLC and Dial-Harrison Commercial, LLC.

2. <u>Development Status</u>. Of the total of 172 lots, only 39 lots contain completed homes as of October 2009. The lots financed through Mutual of Omaha have recently been foreclosed and are now owned by Mutual of Omaha, however, Dial-Harrison, LLC and Dial-Harrison Commercial, LLC, continue to aggressively market the lots which were financed by other lenders.

3. <u>Present Financial Status.</u>  The District had outstanding Construction Fund liabilities of Four Million Two Hundred Five Thousand One Hundred Dollars ($4,205,100.00) as of June 30, 2009. That figure increased to Four Million, Four Hundred Ninety-Nine Thousand, Four Hundred Fifty-Six Dollars and Forty-Six Cents ($4,499,456.46) as of June 30, 2010. Prior to June 30, 2009, certain Warrants (Numbers 1 to 185) were paid in full by the District, in the total amount of Nine Hundred Ninety Thousand, One Hundred Fifty-Six Dollars ($990,156.00). Unpaid accrued interest on those liabilities as of June 30, 2009 was Forty-One Thousand One Hundred Twenty-Nine Dollars ($41,129.00). As of June 30, 2010, that amount had increased to Forty-Three Thousand Seven Hundred Forty-Three Dollars and Eighty-Eight Cents ($43,743.88). Additionally, there were outstanding General Fund Warrants of Two Hundred Six Thousand, Eighty-Two Dollars and Five Cents ($206,082.05), and accrued interest of Eighteen Thousand, Eight Hundred and Thirty-Eight Dollars ($18,838.00).

As of June 30, 2009, the District held cash of Twenty-Two Thousand, One Hundred Two Dollars ($22,102.00). That figure had dropped to Three Thousand Five Hundred Twenty-Eight Dollars and Thirty-One Cents ($3,528.31) as of June 30, 2010.

As of June 30, 2009, the District held investments of Four Hundred Twenty-Nine Thousand, Five Hundred Thirty Dollars ($429,530.00). That figure had increased as of June 30, 2010 to Five Hundred Twenty-Nine, Seven Hundred Fifty-One Dollars and Fifty-four Cents ($529,751.54.)

Finally, there were special assessments due as of June 30, 2009 of Five Hundred Ninety-Four Thousand, Two Hundred Forty-One Dollars ($594,241.00). That figure had decreased as of June 30, 2010 to Five Hundred Thirty Thousand Five Hundred Seventy-Two Dollars and Fifty Cents ($530,572.50).

Taxes to be levied will total One Hundred Twenty-Nine Thousand, Nine Hundred Thirty-Seven Dollars and Fifty Cents ($129,937.50). Based on the 2009 tax valuations, the value of all property within the District (the "Tax Base") is Twelve Million, Two Hundred Fifty-Seven Thousand, Four Hundred Dollars ($12,257,400.00) and the levy per $100 in valuation for the General Fund is Ninety Cents ($0.90). Based on the 2010 tax valuations, the value of all property within the District is Fourteen Million, Four Hundred Thirty-Seven Thousand, Five Hundred Dollars ($14,437,500.00.) Attached hereto and made a part hereof by this reference is **Exhibit "2"** which is the basic financial statements with supplementary information and accompanying independent auditor's report for the year ending June 30, 2009 for Sanitary and Improvement District #507 of Douglas County, Nebraska.

4. <u>Full Development Valuation</u>. The full Tax Base of the development upon completion of construction of all lots is an estimated Forty-Six Million Four Hundred Thousand Dollars ($46,400,000.00). A full taxable valuation of the District would have more than enough income to pay its various debts in a timely fashion.

5. <u>Problems in Paying Warrants Upon Maturity</u>. The problem in Falling Waters is the size of its indebtedness, its lack of cash and cash

equivalents, and insufficient Tax Base. The present Tax Base is not sufficient to support the District's debt. This is a functional defect. The development did not build out as quickly as originally anticipated. Eventually continued construction will raise the Tax Base. With the increased Tax Base, the District will then generate additional tax revenues from the increase in valuation, which will provide the District with the opportunity to issue Bonds and be able to manage its debt load. It is expected that continued construction will allow the District to pay all of its debts, however, additional time is needed beyond the terms of the original maturity dates of the existing Warrants, for such payments to be made.

The fiscal agent of the District recommended that the due date on the Construction Fund Warrants coming due in late December 2009 be extended for one year to allow the District to assess its ability to sell or develop a portion of the additional property within the District. That application was made to the District Court for the District of Nebraska and an order was entered by the Court on January 8, 2010 approving an extension of the maturity dates of all of the warrants maturing prior to December 16, 2010 to one year from their original maturity date.

The fiscal agent for the District projects that the debt of the District can be repaid with annual construction between eight and fifteen homes per year over the next ten years. If these projections are accurate, the District would be able to pay all of its present creditors before the development is fully built out. There are a number of variables such as the average price of the homes and so forth that would affect these projections.

6. <u>Bankruptcy</u>.  The Board of Trustees of the District, in analyzing its ability to pay its debts, has considered a number of options.  Although the District is not in a position to directly control development, it has considered both raising its tax levy to increase its current income and decreasing its tax levy to promote development.  Ultimately, the District has determined, after careful consideration, that neither of these solutions alone would be sufficient to raise the funds necessary to pay the existing debts as they come due.  The District also looked at the possibility of the development of Phase II of the District to provide additional revenue to pay the District's debts.  The District, through its Board of Trustees, came to the difficult conclusion that a restructuring of the District's debt through a Chapter 9 bankruptcy provided the best opportunity to pay all creditors with a maximum return for everyone involved.

The District, through its Board of Trustees, also came to the conclusion that if the Plan of Adjustment was approved by the creditors and the Court, that approval should include a provision to authorize the District to de-annex Phase II as hereinbefore described.  The reason the Board of Trustees of the District came to that conclusion was the uncertainty of being able to finance and pay for the infrastructure needed in Phase II (currently unimproved land), the possibility that financing of that infrastructure would have a priority over and above the existing debt, and the uncertainty of adding to the debt load of the District without any guarantee that Phase II could ultimately provide additional revenue to pay the District's debts.

Therefore, the Board of Trustees of the District authorized the preparation of a Plan of Adjustment, this Disclosure Statement, and a Ballot to be disseminated to Construction Fund Warrant Holders of the District. The District currently does not have any bond debt.

## IV. CLASSES OF CREDITORS

The District has three (3) distinct classes of creditors at this time. Due to the provisions of the Nebraska statutes, the Code and practical considerations, the debts of these creditors will be paid as follows:

A. <u>Administrative Expenses</u>. Administrative expenses are expenses incurred by the District during the course of the bankruptcy. As no party will perform work for a bankruptcy debtor without a guarantee of payment, the Code provides that administrative expenses will be paid in full from the assets of the Debtor. In accordance with the Plan and the Code, all holders of administrative claims will be paid in full either from available funds held by the District, or in the form of General Fund or Construction Fund Warrants issued throughout the pendency of the bankruptcy. These expenses can be significant in a bankruptcy which is not approved by creditors prior to filing.

B. <u>General Fund Warrant Holders</u>. General Fund Warrants issued prior to the filing of bankruptcy are issued in payment for services provided directly to the District. Such warrants are issued to contractors providing street repairs, utility companies and other contractors performing work directly for the District. Retaining these service providers to perform future services to the District is important for the District's continued viability. In order to allow the continued operation of the District at

standard levels of service, General Fund Warrant Holders shall be paid in accordance with the terms of the Warrant issued.

      C.    <u>Construction Fund Warrants</u>. Construction Fund Warrants make up the remainder of the District's debt. For the reasons outlined above, other debts of the District must be paid in full before payment is made to Construction Fund Warrant Holders. In a traditional Chapter 9 bankruptcy, Construction Fund Warrants would be paid some percentage of their value over a short period of time and then terminated regardless of the amount paid. In this case, the District sees the potential to repay Construction Fund Warrant Holders both principal and interest based on the future income of the District.

In exchange for the cancellation of outstanding Construction Fund Warrants, Construction Fund Warrant Holders will be provided with Certificates in accordance with the terms of the Plan. The holders of these Certificates, which may continue to receive payments for as long as fifteen years, will be paid on a pro rata basis as a percentage of the total outstanding obligations, which will include both past and future interest.

## V. DISTRICT OPERATIONS UNDER THE PLAN.

The general goal of the Plan is three-fold. First, the Plan allows the District to continue to operate. Second, the Plan maintains the quality of life for the residents of the District which, in turn, will foster new construction, thus creating additional income for the District. Finally, the operation of the District, together with the increased income of the District, will be used in every way possible to make every effort to repay each and every creditor of the District.

A. <u>District Operations</u>. As provided for in the Plan, the General Fund budget of the District is fixed at Sixty-Five Thousand Dollars ($65,000.00) with a two and one-half percent (2.5%) per year increase. This budget allows for payment of operating expenses as they arise, as well as allowing the District to set aside any excess within this set budget for payment of future expenses. The District may not exceed this budget without an order of the Court.

B. <u>Payment of Existing Construction Fund Warrant Holders</u>. The remaining funds of the District not spent or allocated above, shall be used for the repayment of the current Construction Fund Warrant Holders. The Construction Fund Warrant Holders will have their Warrants exchanged for Certificates issued in accordance with the terms of the Plan. These Certificates will be issued in the amount of principal and interest owed by the District to the Construction Fund Warrant Holder as of the date the first Certificate is issued. Thereafter, the Certificates shall bear simple interest at the rate of four and one-half percent (4.5%) annually. The Certificates will be paid as principal and then interest until all outstanding amounts are paid in full, or until fifteen years from and after the date of the Certificate.

C. <u>Projected Repayment of Certificate Holders</u>. As outlined above, the Plan takes a fairly simple approach to the repayment of Certificate holders. All other expenses of the District are either fixed or minimized. The District is not given the discretion to spend any of its available income other than as determined by the Plan. The projected increase in property values and the related increase in the District's income inures to the benefit of the Certificate holders. Attached hereto and made a part hereof by this reference is **Exhibit 3**, which is a summary of the development status of

SID #507.  **Exhibit 4,** attached hereto, is a range of financial projections reflecting a change in the number of homes constructed each year and the value of the homes to be constructed.  The projections show that with seven new homes built each year for the fifteen years, the debt would be completely funded at fifteen years as the debt currently exists and adjusted as described in this Plan.  If the housing starts are more than seven per year, the Plan will be fully funded before fifteen years.  These assumptions assume the average value of a house to be $175,000.00.  As you can see, payments on these certificates will continue to increase throughout the term of the Plan as development is projected to occur.  The District believes these projections are reasonable.  The District has based the projections on current valuations of existing homes and historical and expected construction rates.  However, it is important to understand that these projections carry some uncertainty.  The two variables affecting the income of the District are the number of homes built and the average value of those homes.  Those two numbers may vary for a number of reasons.  The cost of construction, the local real estate market, the regional and national economy, among other factors, will all affect the District on a year-to-year basis.  A housing boom, combined with general economic growth, may show these projections to be overly conservative.  In the event of a prolong downturn in the housing market, the actual income of the District may not reach the projected level  Notwithstanding these market forces, the fifteen-year term of the Plan allows for good years to make up for a few bad years.  The projections shown are not guarantees of repayment.  They are provided by the District to allow the creditors to make an informed decision as to the variables affecting the amount and time of repayment under the Plan.

D. <u>Additional Expenditures</u>. This Disclosure Statement does not attempt to set forth each and every aspect of the District's operations under the Plan. The Plan should be reviewed together with this Disclosure Statement. Uncommon expenses of the District are subject to change based upon the Plan as submitted and approved by the creditors of the District and the Bankruptcy Court.

E. Once the Plan is approved, Construction Fund Warrant Holders will receive information outlining the procedure for exchanging their Warrants for Certificates. The Construction Fund Warrants will no longer be of any value following the expiration of the exchange. As the finances of the District allow, Certificate holders will receive payment in accordance with the terms of the Plan until paid in full or until fifteen years have elapsed. The Certificates will be freely transferrable so that any holder who wishes to obtain the immediate discounted cash value of the Certificates will be able to sell their Certificates. Based upon current market activity, the District anticipates, but does not guarantee, that a secondary market will exist for the sale of these Certificates.

## VI. CONFIRMATION OF THE PLAN

Construction Fund Warrant Holders are the only creditors required to exchange their Warrants for Certificates under the terms of the Plan. The Construction Fund Warrant Holders are the only class of creditors impaired under the Plan and thus required to approve the Plan. Construction Fund Warrant Holders will be provided a ballot to indicate their approval or disapproval of the Plan. If the Plan is approved by one-half (1/2) in number and two-thirds (2/3) in value of these Construction Fund Warrant Holders voting, will likely be confirmed by the Bankruptcy Court.

DATED this 30TH day of August 2010.

SANITARY AND IMPROVEMENT DISTRICT NO. 507 OF DOUGLAS COUNTY, NEBRASKA

By: _____
William L. Biggs, #10317
Gross & Welch, P.C., L.L.O.
2120 South 72nd Street, #1500
Omaha, NE 68124
bbiggs@grosswelch.com
(402) 392-1500
(402) 392-1538 (fax)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A MUNICIPALITY

I, the authorized officer or an authorized agent of Sanitary and Improvement District #507 of Douglas County, Nebraska, named as Debtor herein, declare under penalty of perjury that I have read the foregoing Disclosure Statement and that it is true and correct to the best of my information and belief

Date: August 30, 2010

By: _____
Name: Patrick G. Day
Title: Chairman

7832-4v4/665081

17